IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| SANTOS D. TORRES-OLAN, | ) |
| | )   1:22-CV-00019-RAL |
| Petitioner | ) |
| | )   RICHARD A. LANZILLO |
| vs. | )   Chief United States Magistrate Judge |
| | ) |
| ATTORNEY GENERAL OF | )   MEMORANDUM OPINION ON |
| PENNSYLVANIA, SUPERINTENDENT | )   PETITION FOR WRIT OF HABEAS |
| OF SCI-HUNTINGDON, AND DISTRICT | )   CORPUS |
| ATTORNEY OF ERIE COUNTY, | ) |
| | )   ECF NO. 5 |
| Respondents | ) |
| | ) |

Before the Court is a pro se Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254 (ECF Nos. 5, 27) by Santos D. Torres-Olan, an individual incarcerated at the State Correctional Institution at Mahoney.[1] Torres-Olan challenges the judgment of sentence imposed by the Court of Common Pleas of Erie County at criminal docket number CP-25-CR-0001888-2015 on four grounds. ECF No. 5. For the following reasons, the Court will grant the petition as to Claim 1 and decline to reach the merits of the remaining claims.[2]

I.      **Factual and Procedural Background**

In April 2015, the Commonwealth charged Torres-Olan with 12 offenses relating to a 911 caller's report that a man had fired a gun at her feet and Torres-Olan's interaction with police

---

[1] 28 U.S.C. § 2254(a) confers jurisdiction upon this Court to hear a petition for writ of habeas corpus filed by an individual who claims to be in custody pursuant to a state court judgment in violation of the Constitution of the United States.

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

officers during the ensuing investigation and arrest. For reasons set forth more fully below, Torres-Olan acted as his own counsel at trial. A jury ultimately found him guilty of two counts of terroristic threats and one count each of carrying a firearm without a license and possession of a firearm with an altered manufacturer's number. The Pennsylvania Superior Court recounted the procedural history of the case, including the circumstances that resulted in Torres-Olan's self-representation, as follows:

> Nicole Sloane, Esquire ("Attorney Sloane"), of the Public Defender's Office, began representing Torres-Olan shortly after he was charged, and the case was held over to the court of common pleas in July 2015 . . . In September 2015, Attorney Sloane filed a petition for leave to withdraw as counsel asserting that Torres-Olan "forfeited" his right to counsel due to his abusive and uncooperative conduct. *See* Petition for Leave to Withdraw as Counsel, 9/10/15, at 2 (unnumbered). The trial court held a hearing on Attorney Sloane's petition to withdraw, found that Torres-Olan forfeited his right to appointed counsel, and, following a brief colloquy, concluded that his decision to waive his right to counsel was knowing and voluntary. *See* N.T. Leave to Withdraw as Counsel Hearing, 9/28/15, at 5-6; *see also* Order, 9/28/15. Subsequently, at Torres-Olan's request, the trial court appointed Garrett Taylor, Esquire, as standby counsel ("standby counsel").

> Torres-Olan proceeded to a jury trial with standby counsel. The Commonwealth, without objection, played a recording of the 911 call that initiated the police response. *See* N.T. Trial Day 1, 2/12/16, at 45. The Commonwealth also called the officers who responded to the call and investigated the incident. The jury found Torres-Olan guilty of two counts of terroristic threats and one count each of firearms not to be carried without a license and possession of a firearm with an altered manufacturer's number. Torres-Olan filed post-trial motions for judgments of acquittal and a new trial, which the trial court denied. The trial court imposed consecutive sentences totaling 115 to 230 months of imprisonment. Torres-Olan filed a post-sentence motion to modify the sentence, which the trial court denied.

*Commonwealth v. Torres-Olan*, 2022 WL 17348874, at *2 (Pa. Super. Ct. Dec. 1, 2022).

At some point thereafter, Torres-Olan had his direct appeal rights reinstated and filed an appeal with the assistance of William Hathaway, Esquire, as his appointed counsel. *Id*. The Superior Court affirmed Torres-Olan's judgment of sentence and the Pennsylvania Supreme Court denied his allowance of appeal. *Id*. Torres-Olan responded by filing a pro se petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA") challenging, in part, "the adequacy of the trial court's colloquy when granting Attorney Sloane leave to withdraw and permitting him to proceed pro se." *Id*. The PCRA court conducted a hearing "limited to the issues of the adequacy of the trial court's waiver of counsel colloquy and ***Attorney Hathaway's failure to raise the claim on direct appeal***." *Id*. (emphasis added). After hearing testimony from Torres-Olan and Attorneys Sloane and Hathaway, the PCRA court denied Torres-Olan's PCRA petition on August 25, 2021. *Id*.

Torres-Olan testified at the PCRA hearing that he believed the trial court committed reversable error when it failed to give him the colloquy required by Rule 121 of the Pennsylvania Rules of Criminal Procedure before it determined that he knowingly and voluntarily waived his right to counsel. He further testified that he asked Attorney Hathaway to raise this issue on direct appeal. ECF No. 31 at 9-11, 19.

Attorney Hathaway confirmed that Torres-Olan asked him to raise the Rule 121 error claim on direct appeal. *Id.* at 46-48. Initially, Attorney Hathaway could not specifically recall why he did not do so, but said he assumed it was because he did not believe the claim had merit. *Id.* He then testified that "what's transpired here today kind of brings back to my mind my review of things. It essentially was a breakdown in attorney/client relationship and that Mr. Torres-Olan didn't have a right to shop for an attorney. And I believe [the trial court] pursued a standard

process in terms of protecting his rights. And, in fact, went to the extreme measure of appointing standby counsel in the form of Attorney Taylor." *Id.* at 46.

Following the hearing, the PCRA court denied Torres-Olan's claim that Attorney Hathaway was ineffective in failing to raise the issue of a defective Rule 121 colloquy because it determined that "the trial court properly found that Torres-Olan forfeited his right to counsel and there was no need for a Rule 121 colloquy." *Torres-Olan*, 2022 WL 17348874, at *5. Thus, the PCRA court concluded, Attorney Hathaway could not be found to be ineffective for failing to raise a meritless claim on direct appeal. *See also id.* ("When a defendant waives the right to counsel, Rule 121 requires a thorough colloquy to ensure the defendant's waiver is knowing, intelligent, and voluntary… The forfeiture of the right to counsel is distinct from waiver…. When a defendant forfeited the right to counsel, a court need not engage in a Rule 121 colloquy.")

On appeal, the Superior Court acknowledged that the PCRA Court had construed Torres-Olan's petition for post-conviction relief to include a claim of ineffective assistance of appellate counsel based on Attorney Hathaway's failure to raise the adequacy of the trial court's pro se colloquy on direct appeal. The Superior Court also noted that the PCRA Court had conducted a hearing on that issue. On independent review, the Superior Court addressed, among other issues, whether the trial court erred "in failing to ensure that [Torres-Olan] received a proper colloquy prior to [Attorney Sloane] withdrawing from the case, and thus violat[ed] his right to counsel."[3]

---

[3] The second and third issues raised in Torres-Olan's PCRA petition were:

Did the court err in ruling that [Torres-Olan's] right to confront his accuser was not violated when a 911 recording was introduced at trial without [Torres-Olan] being able to cross-examine and/or confront the "accusers" in the recording?

Did the court err in ruling that appellate trial counsel was effective when trial counsel failed to raise arguments on appeal regarding the weight and sufficiency of the evidence and the issue regarding the 911 tape?

*Id.* at *3.

4

*Id.* at *3.  As with the PCRA Court, the Superior Court appeared to address this issue through the lens of ineffective assistance of direct appellate counsel.  *Id.* at *5 ("The PCRA court concluded that Attorney Hathaway, Torres-Olan's direct appeal counsel, was not ineffective for failing to raise the issue of a defective colloquy because the trial court properly found that Torres-Olan forfeited his right to counsel and there was no need for a Rule 121 colloquy.").  Following its review of the record, the Superior Court affirmed the PCRA court's order denying Torres-Olan's petition, but on different grounds than that given by the PCRA court .  *Id.* at *4-8.  As discussed below, the Superior Court held that Torres-Olan was not prejudiced by Attorney Hathaway's alleged ineffective assistance. *Id.*  Therefore, it addressed only that prong of an ineffective assistance of direct appeal counsel claim.[4]

On July 18, 2023, the Supreme Court of Pennsylvania denied Torres-Olan's Petition for Allowance of Appeal.  *See Commonwealth v. Torres-Olan*, 301 A.3d 866 (Pa. 2023).  In the meantime, on January 18, 2022, and before the Superior Court had issued its decision in Torres-Olan's PCRA appeal, Torres-Olan initiated the instant habeas corpus action.  ECF No. 1.  In his petition, he raises the following four grounds for relief:

(1) The trial court "granted Ms. Sloane's motion" to withdraw and informed Torres-Olan "that [he] must proceed pro se" because he "forfeited [his] right to counsel" without "conduct[ing] a pro-se colloquy";

(2) Torres-Olan was denied his right to face his accusers when the trial court denied his request to cross-examine the DNA expert and allowed the Commonwealth to play the tape of the 911 caller at trial;

(3) The Commonwealth's evidence was insufficient to sustain Torres-Olan's guilty verdicts for the gun possession charges; and

---

[4] Because a petitioner cannot prevail on an ineffective assistance claim unless he establishes all prongs of the *Strickland v. Washington* test (discussed below), the Supreme Court permits courts to address only the prejudice prong if it is more efficient to proceed in that manner.

(4) Torres-Olan's "sentencing was compromised" because his prior record score was too high and the trial court improperly aggregated his sentences and ran them consecutively instead of concurrently.

ECF No. 5, pp. 5, 7, 10. As part of his first ground for relief, Torres-Olan also contends that Attorney Hathaway rendered ineffective assistance by failing to challenge the defective pro se colloquy on direct appeal. *Id.* at 5.

On May 16, 2022, and before the Superior Court had issued its decision in Torres-Olan's PCRA appeal, the District Attorney's office filed a response to the Petition and submitted copies of the relevant state court filings and the state court record. *See* ECF Nos. 11, 13-1 – 13-7, 14, 15, 16. This Court subsequently issued an order directing the Clerk to stay and administratively close the case pending the outcome of Torres-Olan's PCRA appeal. *See* ECF No. 22. After the Superior Court issued its decision and the Pennsylvania Supreme Court denied a Petition for Allowance of Appeal, this Court granted Torres-Olan's motion to reopen the case following the conclusion of his state court appeal and permitted the parties an opportunity to file supplemental briefs. *See* ECF Nos. 23, 24. Torres-Olan submitted a supplemental brief and several exhibits, *see* ECF Nos. 27-29, but Respondents declined to file supplemental papers. This matter is now ripe for adjudication.

## II.    Standard of review

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)). In enacting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress "significantly limited the federal court's power to grant a writ of habeas corpus." *Tolbert v. Ferguson*, 2019 WL 4677357 at *2 (E.D. Pa. Aug. 8, 2019). Under § 2254, a district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of

the Constitution or laws of the United States." 28 U.S.C. § 2254(a). Moreover, federal courts

must give considerable deference to determinations made by state trial and appellate courts. *See*

*Renico v. Lett*, 599 U.S. 766, 772 (2010). Thus, if a claim presented in a § 2254 petition has been

adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim (1) resulted in a decision that was
> contrary to, or involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme Court of the
> United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254 (d).[5] It is the habeas petitioner's burden to show that the state court's decision

was contrary to or an unreasonable application of United States Supreme Court precedent and/or

an unreasonable determination of the facts. *Moreno v. Ferguson*, 2019 WL 4192459, at *3 (W.D.

Pa. Sept. 4, 2019).

A state-court decision is "contrary to" clearly established federal law if the state court either

"applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and

arrives at a result opposite to [the result reached by the Court]." *Bell v. Cone*, 543 U.S. 447, 452-

53 (2005) (per curiam) (quoting *Williams v Taylor*, 529 U.S. 362, 405 (2000). For purposes of §

2254(d)(1), "the phrase 'clearly established Federal law, as determined by the Supreme Court of

the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412 (2000).

That said, "[a] federal court may not overrule a state court for simply holding a view different from

---

[5] When applying § 2254(d), the federal habeas court considers the "last reasoned decision" of the state courts. *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)); *Brown v. Sup't Greene SCI*, 834 F.3d 506, 512 (3d Cir. 2016). Here, that is the Superior Court's decision issued in Torres-Olan's PCRA proceeding.

its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Put differently, under the "unreasonable application" standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

If the petitioner satisfies the requirements of § 2254(d), the federal habeas court "must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred." *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 849 (3d Cir. 2017), *as amended* (July 18, 2017). "That is because, despite applying an improper analysis, the state court still may have reached the correct result." *Id.* As such, a federal court can only grant habeas relief "if it is 'firmly convinced that a federal constitutional right has been violated.'" *Id.* (quoting *Williams*, 529 U.S. at 389).

The United States Court of Appeals for the Third Circuit has emphasized the heavy burden habeas petitioners bear, noting that "even 'clear error'" by the state courts "will not suffice." *Orie v. Sec. Pa. Dept. of Corrections*, 940 F. 3d 845, 850 (3d Cir. 2019). Moreover, the factual determinations of the state courts are presumed correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."). State-court determinations of factual issues are "presumed to be

correct," and the federal habeas petitioner bears the burden of rebutting this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Burt v. Titlow*, 571 U.S. 12, 18 (2013). The presumption of correctness under § 2254(e)(1) "applies to the factual determinations of both state trial and appellate courts," *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001), and applies to implicit factual findings "to the same extent as express factual findings," *Taylor*, 504 F.3d at 433. Whether implicit or explicit, a state court's credibility determinations are findings of fact entitled to deference under AEDPA. *See Rice v. Collins*, 546 U.S. 333, 338-39 (2006).

### III.   Analysis

#### A. Timeliness

Before the Court can address the merits of the petition, it must first decide whether it was timely filed. *Romansky v. Superintendent Green SCI*, 933 F.3d 293, 298 (3d Cir. 2019). Pursuant to AEDPA, a state prisoner must file his federal habeas claims within one year of the date his judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A). Here, Torres-Olan's sentence became final for purposes of the one-year PCRA statute of limitations and the one-year federal habeas statute of limitations on July 13, 2020, when the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal from the Superior Court's decision on direct appeal. *See* 28 U.S.C. § 2244(d)(1)(A) (the one-year federal limitations period generally begins on the date the petitioner's judgment of sentence became final "by the conclusion of direct review or the expiration of the time for seeking such review"). When Petitioner filed his PCRA petition on August 3, 2020, however, the one-year habeas statute was "immediately tolled." *Nelson v. Superintendent of SCI-Retreat*, 2019 WL 897296 *2 n.4 (E.D. Pa. Jan. 31, 2019). His PCRA petition remained pending in the state court system until July 18, 2023, when the Pennsylvania

Supreme Court denied his Petition for Allowance of Appeal from the Superior Court's affirmance of the dismissal of his PCRA petition. *See Commonwealth v. Torres-Olan*, 301 A.3d 866 (Pa. July 18, 2023). The instant 2254 petition, filed well before that date, was timely by almost a full year.

### B. Exhaustion

As a general matter, a federal district court may not consider the merits of a habeas petition unless the petitioner has "exhausted the remedies available" in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A petitioner satisfies the exhaustion requirement "only if [he or she] can show that [they] fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). The purpose of the exhaustion requirement is to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts … by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

To "fairly present" a claim for exhaustion purposes, the petitioner must advance the claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *O'Sullivan*, 526 U.S. at 845. Either way, the petitioner must present his federal constitutional claims "to each level of the state courts empowered to hear those claims." *Id.* at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "Once a petitioner's federal claims have been fairly presented to the state's highest court,

the exhaustion requirement is satisfied." *Stoss v. Estock*, 2019 WL 2160464, at *3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989)).

Here, Respondents argue that the Petition must be dismissed as a "mixed petition" because Torres-Olan did not exhaust Claim 1 and portions of Claim 4. ECF No. 13, pp. 6, 10. To determine whether Torres-Olan's claims have been "fairly presented," the Court must compare each of the claims in the instant petition to those raised in state court. With respect to Claims 2, 3, and 4, Respondents correctly acknowledge that Torres-Olan asserted each during his direct appeal to the Superior Court. *See* ECF No. 13, p. 13; *Commonwealth v. Torres-Olan*, No. 743 WDA 2019, 2019 WL 7372801, at *3 (Pa. Super. Ct. Dec. 31, 2019).[6] His first claim for relief, however, warrants further examination.

In his pro se direct appeal, Torres-Olan included a claim that his conviction should be vacated because the trial court conducted an inadequate pro se colloquy before requiring him to represent himself. *See* ECF No. 5, p. 5. His appointed counsel, Attorney Hathaway, declined to include this issue when he filed Torres-Olan's counseled brief on direct appeal to the Superior Court. *See* ECF No. 27, pp. 5-6. Torres-Olan later asserted the same claim in his appeal to the Superior Court following the denial of PCRA relief.[7] Like the PCRA Court, the Superior Court construed Torres-Olan's challenge to the adequacy of the trial court's pro se colloquy as an

---

[6] On direct appeal, Torres-Olan raised the following issues: (1) whether the [trial c]ourt committed an abuse of discretion in allowing the presentation by the Commonwealth of evidence relating to the 911 call thereby violating the confrontation clause; (2) whether there was sufficient evidence to sustain the guilty verdicts because no physical evidence was offered including the fingerprints or DNA of [appellant] linking him to the firearm at issue; (3) whether the sentencing guidelines were compromised in that an offense gravity score of 5 was employed wherein the offense gravity score should have been a 2 or at worst a 3; and (4) whether all criminal counts should have merged for purposes of sentencing. *See Commonwealth v. Torres-Olan*, No. 743 WDA 2019, 2019 WL 7372801, at *3 (Pa. Super. Ct. Dec. 31, 2019).

[7] Consistent with the interpretations of the PCRA Court and the Superior Court, this Court liberally construes Torres-Olan's first claim in the pending petition as an ineffective assistance of appellate counsel claim.

ineffective assistance claim based on his appointed counsel's failure to raise the issue on direct appeal. *Torres-Olan*, 2022 WL 17348874, at *5. The Pennsylvania Supreme Court denied Torres-Olan's Petition for Allowance of Appeal from the Superior Court's decision on July 18, 2023.[8] *See Commonwealth v. Torres-Olan*, 301 A.3d 866 (Pa. 2023). Based on this procedural history, the Court concludes that each of the claims raised in Torres-Olan's federal habeas petition was fairly presented to Pennsylvania's highest court and, accordingly, has been exhausted.

### C. Merits

In addition to raising an exhaustion defense, Respondents challenge Torres-Olan's claims on the merits. Although he asserts four grounds for relief, the Court finds that Torres-Olan's first claim – that the trial court failed to conduct an adequate pro se colloquy and, in turn, appointed counsel failed to raise the issue on direct appeal – is meritorious. Given this disposition, the Court need not reach his remaining claims.[9]

Notably, when addressing the merits of Claim 1 in their response to the Petition, which they filed in May 2022, Respondents asserted only that the claim lacks merit for the same reason the PCRA court determined that it did— that is, because Torres-Olan forfeited his right to counsel and thus Rule 121 did not apply to him. ECF No. 13 at 7-8. The Superior Court subsequently rejected this argument in its December 2022 decision. Although this Court gave Respondents the opportunity to supplement their response after Torres-Olan's PCRA appeal concluded, Respondents inexplicably failed to do so.

---

[8] This occurred after Respondents filed the brief in which they argued that Claim 1 had not been exhausted.

[9] *See e.g.*, *United States v. Welty*, 674 F.2d 185, 194 n.7 (3d Cir. 1982) ("Because of our disposition of the case, we need not reach and do not decide Welty's claim that the trial court failed to take adequate measures to prevent jury prejudice and confusion resulting from Welty's dual role as defendant and counsel.").

**1. The State Courts' Adjudication of Claim 1**

As noted above, Torres-Olan contends that his conviction should be vacated because appellate counsel failed to argue on direct appeal that the trial court had conducted an inadequate pro se colloquy before requiring him to represent himself at trial. The Superior Court addressed this claim on appeal from the denial of Torres-Olan's PCRA Petition. *Torres-Olan*, 2022 WL 17348874, at *5. This Court reviews the Superior Court's decision through AEDPA's deferential lens. Thus, to obtain relief, Torres-Olan first must show that the state courts' adjudication of this claim was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

On direct appeal, Torres-Olan had attempted to raise a claim challenging the trial judge's failure to provide a proper waiver-of-right-to-counsel colloquy in his initial pro se brief to the Superior Court. However, Attorney Hathaway, after being appointed to represent Torres-Olan on direct appeal, declined to reassert that issue in Torres-Olan's subsequent counseled brief. *See* ECF No. 5 at 5; ECF No. 27; ECF No. 13-5; ECF No. 27 at 5-6. Because the deficient colloquy issue had not been preserved on direct appeal, the PCRA Court construed the claim in Torres-Olan's PCRA Petition "as a layered ineffective claim for failure of his appellate counsel to raise the issue on direct appeal." *Id.* at 10. The PCRA Court held a hearing "limited to the issues of the adequacy of the trial court's waiver of counsel colloquy and Attorney Hathaway's failure to raise the claim in the direct appeal . . ." *Torres-Olan*, 2022 WL 17348874, at *2 (internal citations omitted). The PCRA Court rejected Torres-Olan's claim after agreeing with the trial court that Torres-Olan had forfeited his right to counsel and, therefore, a pro se colloquy under Pa. R. Crim. P. 121 was unnecessary.[10] *Id.* at *7.

---

[10] The trial court determined that Torres-Olan had forfeited his right to counsel after holding a brief hearing on his appointed public defender's motion to withdraw as counsel. In her motion, counsel explained that she and Torres-

On appeal from the PCRA Court's order, the Superior Court similarly treated Torres-Olan's challenge to the trial court's pro se colloquy as a claim for ineffective assistance of appellate counsel, noting that the "PCRA court held the hearing to consider adequacy of the trial court's colloquy and Attorney Hathaway's failure to raise the issue in the direct appeal." *Torres-Olan*, 290 A.3d 650, at *6 n.14 (citing N.T. PCRA Hearing, 4/29/21, at 6).   The Superior Court summarized the evidence at the PCRA hearing by observing that "Torres-Olan testified—and Attorney Hathaway confirmed—that he asked Attorney Hathaway to raise the issue of the absence of a waiver of counsel colloquy on direct appeal, but that Attorney Hathaway did not raise the issue." *Id.* The Superior Court then set out the three elements Pennsylvania law recognizes as necessary for a successful ineffective assistance claim:

> [T]o prevail on a claim of ineffective assistance of counsel, the PCRA petitioner must rebut the presumption that counsel was effective by demonstrating:

---

Olan had repeatedly disagreed regarding pretrial motions and that Torres-Olan had sent her correspondence that she considered disparaging and disrespectful.  At the conclusion of the hearing, the following exchange occurred between the trial judge and Torres-Olan:

> THE COURT: Well, here's where we're at ... you're entitled to have counsel represent you. And if you don't believe your counsel is acting in your best interests, then you can fire her. But I will tell you this, I see nothing in this record[ ] that would support that. And if you decide you don't want representation by the public defender's office, then you will forfeit your right to have appointed counsel, because I see no reason for your action. So that would mean that your choices are, you can go on and represent yourself or you can [hire] a lawyer. That's entirely up to you. Do you understand that?

> MR. TORRES-OLAN: Yes, sir.

> THE COURT: So what would you like to do?

> MR. TORRES-OLAN: I would like to represent myself, Your Honor.

> THE COURT: All right. Is that a knowing and voluntary decision on your part?

> MR. TORRES-OLAN: Yes.

*Torres-Olan*, 290 A.3d 650 at *4 (quoting N.T., 9/28/15, at 5-6).

> (1) the underlying substantive claim has arguable merit; (2) counsel
> whose effectiveness is being challenged did not have a reasonable
> basis for his or her actions or failure to act; and (3) the petitioner
> suffered prejudice as a result of counsel's deficient performance.

*Torres-Olan,* 290 A.3d 60, at *3 (quoting *Commonwealth v. Pou*, 201 A.3d 735, 738-39 (Pa.

Super. 2018) (internal citation omitted)).[11]

In analyzing the first element–whether "the underlying substantive claim has arguable

merit"—the Superior Court rejected the trial court and PCRA Court's conclusion that Torres-Olan

had forfeited his right to counsel, holding that Torres-Olan's treatment of his appointed attorney

"was not so 'extreme' as to forfeit his right to trial counsel as a matter of law." *Id.* at * 5.  In the

absence of forfeiture, the Superior Court acknowledged that Pa. R. Crim. P 121 ordinarily

"requires a thorough colloquy to ensure the defendant's waiver [of his right to counsel] is knowing,

intelligent, and voluntary." *Id*.  Because the trial court failed to conduct a Rule 121 colloquy, the

Superior Court appeared to recognize that Torres-Olan had demonstrated "a technical defect" in

the waiver process that, if raised by Attorney Hathaway on direct appeal, would have entitled

Torres-Olan to a new trial.  *Id*.  Rather than grant relief, however, the Superior Court drew a

purported distinction between the burden of proof for an inadequate waiver colloquy claim on

direct appeal and the burden of proof during collateral proceedings when the adequacy of the

colloquy is the underlying claim in an ineffective assistance of direct appeal counsel claim.  The

Superior Court explained:

> Our conclusion that Torres-Olan did not forfeit his right to counsel
> does not end our review, however, as the PCRA requires a higher
> burden for challenging a defective waiver of counsel colloquy than
> a direct appeal. *See Pou*, 201 A.3d at 746 (discussing the more
> stringent standards applicable to PCRA claims alleging a defective

---

[11] Several years after the Superior Court issued its opinion in *Commonwealth v. Pou*, 201 A.3d 735, 738-39 (Pa. Super. 2018), this Court issued a conditional writ of habeas corpus in *Pou v. Superintendent SCI Forest*, 2021 WL 5604991 (W.D. Pa. Nov. 29, 2021).  To avoid confusion, the Court will refer to the Superior Court's decision as *Pou I* and the federal habeas decision as *Pou II.*

waiver of counsel colloquy than a direct appeal claim). In a direct appeal, this Court will require strict compliance with Rule 121 and must first consider whether a colloquy complied with Rule 121 before considering whether the defendant knowingly, intelligently, and voluntarily waived the right to trial counsel. *See Phillips*, 93 A.3d at 853; *see also Pou*, 201 A.3d at 747. Once a conviction becomes final, however, a PCRA petitioner has a heightened burden of proof. He must plead and prove that an issue (1) is not waived under the PCRA, *see* 42 Pa.C.S.A. § 9544(b) (stating that "an issue is waived if the petitioner could have raised it but failed to do so ... on appeal ..."), and (2) establishes a constitutional or structural error meriting a new trial. *See Commonwealth v. Isaac*, 205 A.3d 358, 367 (Pa. Super. 2019).

Thus, in the context of the PCRA, it is not sufficient for a PCRA petitioner to rely on cases addressing a defective colloquy as if on direct appeal. *See id.* Further, a PCRA petitioner cannot rely on the fact that a court would have awarded a new trial if a defective colloquy claim had been raised on direct appeal. *See Pou*, 201 A.3d at 746 (noting that a claim that may have warranted a new trial in a direct appeal does not require a new trial in a PCRA proceeding). Rather, in a PCRA appeal, "the prophylactic purpose of ensuring strict compliance with Rule 121 dissipates to a great degree ... [where] finality considerations justify applying a higher standard of prejudice than what would have applied on direct review." *Id.* at 747. As our Supreme Court noted, a "waiver colloquy is a procedural device; it is not a constitutional end or a constitutional 'right'" in itself. *Commonwealth v. Mallory*, 941 A.2d 686, 697 (Pa. 2008) (noting, in a PCRA appeal, that the absence of an on-the-record colloquy concerning the fundamentals of a constitutional right, such as a trial by jury, "does not prove, in an absolute sense, that a defendant failed to understand the right he waived"). Thus, a PCRA petitioner bears the burden of establishing more than a technical defect in the trial court's colloquy under Rule 121. *See Isaac*, 205 A.3d at 367.

*Torres-Olan*, 2022 WL 17348874, at *6.

Applying this heightened burden, the Superior Court concluded that Torres-Olan's claim "[did] not meet the stringent standard for relief under the PCRA." *Id.* Focusing on the prejudice element of Torres-Olan's claim, the Superior Court reasoned that, because Torres-Olan's testimony addressed only the "technical deficiencies" of his Rule 121 colloquy, he had failed to

meet his burden of demonstrating that the deficient colloquy rose to the level of a Sixth Amendment violation. The Superior Court explained:

> Similar to the PCRA appellants in *Pou* and *Isaac*, Torres-Olan focused his pleadings and testimony on the technical deficiencies of the colloquy under Rule 121(A)(2). However, as *Isaac* and *Pou* instruct, Torres-Olan was required to show more, and he neither alleged or proved a structural error, i.e., that the trial court denied a request for new counsel, nor did he establish a constitutional violation, i.e., that the colloquy was so deficient under the totality of the circumstances that he could not have properly waived his right to counsel. *See Isaac*, 205 A.3d at 367; *Pou*, 201 A.3d at 745-46.

*Id.* at *6-*7. In a footnote, the Superior Court also noted that it found "nothing in the record [to] support a finding that Torres-Olan's decision to proceed pro se without Attorney Sloane as his counsel was unknowing, involuntary, or unintelligent under the totality of the circumstances." *Id.* at *7 n. 15. The court observed that Torres-Olan "had prior experiences with the criminal justice system" and "was a relatively sophisticated defendant who was aware of the consequences of his decision to proceed without counsel." *Id.* For these reasons, the Superior Court concluded "that Torres Olan's underlying assertion that the trial court's waiver of counsel colloquy was inadequate merit[ed] no relief." *Id.* at *7.

### 2. The Superior Court's adjudication of Claim 1 was "contrary to" the Supreme Court's decisions in *Strickland v. Washington*, 466 U.S. 668 (1984) and *Smith v. Robbins*, 528 U.S. 259 (2000).

As previously discussed, the Superior Court treated Torres-Olan's waiver-of-counsel claim as an ineffective assistance of appellate counsel claim based on Attorney Hathaway's failure to raise the allegedly deficient waiver colloquy on direct appeal. The "clearly established federal law" governing such claims is the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, the Petitioner has the burden of establishing that "counsel's representation fell below an objective standard of reasonableness." *Id.*

at 688.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id*. at 687.  *Strickland* also requires a petitioner to demonstrate that he was prejudiced by counsel's allegedly deficient performance – in other words, that "there is a reasonable probability that, but for counsel's unprofessional errors," the result of his proceeding "would have been different."  *Id*. at 694.  In the context of ineffectiveness of appellate counsel, this requires the petitioner to demonstrate a reasonable probability that, but for counsel's failure, he "would have prevailed on his appeal."  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland*, 466 U.S. at 694).[12]

Pennsylvania courts typically articulate *Strickland*'s standard in three parts, while federal courts set it out in two.  The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.  *See, e.g.*, *Commonwealth. v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland*'s] performance component into sub-parts dealing with arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and  Appellant suffered prejudice as a result.").  Pursuant to Pennsylvania's formulation of *Strickland*, Torres-Olan had to establish that: (1) his deficient pro se colloquy claim had merit; (2) Attorney Hathaway did not have a reasonable basis for declining to raise this claim on direct appeal; and (3) Torres-Olan suffered prejudice as a result of Attorney Hathaway's failure to raise this issue on direct appeal.

The Superior Court recognized that this standard applied to Torres-Olan's ineffective assistance of counsel claim, denying the claim based on a perceived failure of proof as to the third

---

[12] The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective.'" *Evitts v. Lucey*, 469 U.S. 387, 392 (1985) (quoting *Griffin v. Illinois*, 351 U.S. 12, 20 (1956)).  These include the right to the effective assistance of counsel on appeal. *Id.* at 396.

element.  Specifically, the court held that Torres-Olan had failed to show prejudice because "he neither alleged or proved a structural error, i.e., that the trial court denied a request for new counsel, nor did he establish a constitutional violation, i.e., that the colloquy was so deficient under the totality of the circumstances that he could not have properly waived his right to counsel." *Torres-Olan*, 290 A.3d at *7 (citing *Isaac*, 205 A.3d at 367; *Pou*, 201 A.3d at 745-46).  However, by requiring Torres-Olan to establish that the denial of a proper pro se colloquy not only constituted a reversable error that would have required a new trial on direct appeal under state law, but also amounted to an independent constitutional violation, the Superior Court adopted a significantly more demanding standard of prejudice than the standard outlined in *Strickland* and *Robbins*.  This decision was, accordingly, contrary to clearly established federal law as determined by the Supreme Court of the United States.

In arriving at this conclusion, the Court notes that the constitutional issue presented to the Superior Court was not whether Torres-Olan's Sixth Amendment right to *trial* counsel was violated, but rather, whether his *Fourteenth Amendment* right to *effective assistance of appellate counsel* was violated.  *See e.g.*, *Pou v. SCI Forest*, 2021 WL 5604991, at *3 n.3 (W.D. Pa. Nov. 29, 2021) ("*Pou II*") (internal quotations and quoting sources omitted).  This distinction is critical because an ineffective assistance of appellate counsel claim under *Strickland* does not require proof that the "underlying claim" – i.e., the trial court's defective pro se colloquy – amounted to a constitutional violation.  Rather, Torres-Olan need only show that Attorney Hathaway's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced the outcome of Torres-Olan's direct appeal.  He can satisfy this standard by demonstrating that Attorney Hathaway lacked an objectively reasonable basis for failing to raise a meritorious state law claim on direct appeal and that, but for Attorney Hathaway's error, his direct

appeal would have been successful. *Robbins*, 528 U.S. at 285-86.  Because the Superior Court did not recognize this distinction, it elevated Torres-Olan's burden to demonstrate prejudice to a level incompatible with *Strickland* and *Robbins*.

This Court recently granted a writ of habeas corpus under similar circumstances in *Pou II*. Like Torres-Olan, Pou attacked appellate counsel's failure to challenge the insufficiency of the trial court's Rule 121 pro se colloquy on direct appeal.  The Superior Court recognized in *Pou I* that Pou's underlying claim was a Rule 121 violation and held that it had arguable merit – i.e., that appellate counsel's failure to raise the claim was objectively unreasonable and that Pou would have prevailed on his appeal and received a new trial had the claim been raised. *Pou II*, 2021 WL 5604991, at *1 (quoting *Pou I*, 145 A.3d 778).   Despite this conclusion, the Superior Court declined to grant relief after determining, based on the United States Supreme Court's decision in *Weaver v. Massachusetts*, 582 U.S. 286 (2017), that *Strickland* required a greater showing of prejudice than Pou could demonstrate.

In *Weaver*, the Supreme Court was tasked with deciding how to evaluate a claim that trial counsel's ineffectiveness resulted in a specific structural error-- a Sixth Amendment public-trial violation (specifically, the closing of the court during voir dire). The Supreme Court explained that it granted certiorari to resolve the disagreement among the federal courts of appeals and some state courts as to whether a defendant must prove prejudice when the structural error "was neither preserved nor raised on direct review but is raised later via a claim alleging ineffective assistance of counsel." *Weaver*, 582 U.S. at 293. It also made clear that it was resolving the disagreement "specifically and only in the context of trial counsel's failure to object to the closure of the courtroom during jury selection." *Id.* at 294. In *Weaver*, a majority of the Court agreed that a

showing of prejudice was required for an ineffectiveness claim concerning the failure to object to a courtroom closure.[13] *Id.* at 299-303, 305-08.

The Superior Court in *Pou I* interpreted *Weaver's* holding to mean that, "for the discrete claim of ineffective assistance of appellate counsel for failing to challenge a defective Rule 121 colloquy, the prejudice showing on collateral review requires a showing that the waiver of counsel was constitutionally deficient" and not just a violation of the state rule of criminal procedure. 201 A.3d at 743, 744.  But that was a misreading of *Weaver* which, as discussed above, simply held that when a defendant claimed his counsel was ineffective for failing to preserve the specific structural error at issue in that case (the closure of the courtroom to the public) prejudice would not be presumed and the defendant had to satisfy *Strickland's* prejudice prong. The Superior Court ultimately concluded that Pou had failed to show the requisite prejudice under *Strickland* because, although the colloquy he received was deficient under Rule 121 and therefore he would have received relief on direct appeal had counsel raised that error, he had not established that the waiver of counsel colloquy was constitutionally deficient.  *Id.*

In granting Pou's federal habeas corpus petition, this Court rejected the Superior Court's application of *Weaver* to the *Strickland* analysis.  As this Court explained:

> In *Weaver*, the United States Supreme Court addressed whether it was necessary for a criminal defendant to show prejudice when asserting a claim of ineffective assistance of counsel for failure to object to a structural error. It is noteworthy that . . . the *Weaver* Court specifically limited its holding to 'the context of trial counsel's failure to object to the closure of the courtroom during jury selection.'" *Id*. at 1907. The application of *Weaver* to this case, which involves neither the closure of a courtroom during jury

---

[13] The defendant in *Weaver* also argued that under *Strickland* prejudice could be established "even if there is no showing of a reasonable probability of a different outcome,…if the convicted person shows that attorney errors rendered the trial fundamentally unfair." 582 U.S. at 299. Justice Kennedy, delivering the opinion of the Court in which five other Justices joined, explained that it would "assume," "[f]or the analytical purposes of th[e] case," the petitioner's interpretation of *Strickland* is the correct one," but that, in light of its ultimate holding, it "need not decide that question here." *Id.*

selection nor a claim of trial counsel's ineffectiveness, was inappropriate.

In *Weaver*, the Court addressed the remedy for violation of a structural right. A structural error is one that "'affects the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver*, 137 S. Ct. at 1907 (quoting *Arizona v. Fulminate*, 499 U.S. 279, 310 (1991)). For that reason, such errors are not subject to the harmless error standard. *Weaver*, 137 S. Ct. at 1907-08. Thus, if a structural error is objected to at trial or raised on direct appeal, the defendant is generally entitled to an "automatic reversal." *Id.* at 1910. *Weaver* held, however, that when a structural error is raised in the context of an ineffective-assistance claim, *Strickland* prejudice is not shown automatically; prejudice must be shown in these cases as *Strickland* dictates. *Id.* at 1911. Because the claim in *Weaver* concerned trial counsel's ineffectiveness, the Court focused its prejudice analysis on the outcome of the trial. *Id.* at 1912-13. Again, unlike this case, *Weaver* did not concern appellate counsel's ineffectiveness.
. . . .
In short, the Superior Court[] failed to apply *Strickland*'s prejudice standard when it evaluated Pou's claim. Thus, its decision was 'contrary to' *Strickland*.

*Pou II*, 2021 WL 5604991, at *4.

The same conclusion is warranted here. The Superior Court misconstrued the applicable burden required to establish *Strickland*'s prejudice prong. In so doing, the Superior Court elevated the burden on Torres-Olan to establish that prong. As explained above, by requiring Torres-Olan to establish that the denial of a proper pro se colloquy not only constituted a reversable error that would have required a new trial on direct appeal under state law, but also amounted to an independent constitutional violation, the Superior Court adopted a significantly more demanding standard of prejudice than the standard outlined in *Strickland* and *Robbins*. The correct rule from those cases required Torres-Olan to demonstrate a reasonable probability that, but for direct appeal counsel's deficient performance, he "would have prevailed on his appeal." *Robbins*, 528 U.S. at 285-86 (citing *Strickland*, 466 U.S. at 694). The Superior Court did not apply that rule here.

Thus, the Superior Court's adjudication of Torres-Olan's claim that Attorney Hathaway was ineffective was "contrary to" Supreme Court precedent. Accordingly, Torres-Olan has overcome AEDPA's standard or review at § 2254(d)(1), and the Court must now review his claim de novo to determine whether he has satisfied his burden of demonstrating that his appellate counsel was ineffective under *Strickland*. The record developed by the state courts provides a sufficient basis for the Court to do so.

### 3. Attorney Hathaway's representation, reviewed de novo, violated *Strickland* and amounted to ineffective assistance of counsel.

To resolve whether appellate counsel was ineffective for failing to raise the pro se colloquy issue, the Court must first determine whether the underlying issue has merit. *See United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000) ("[I]t is not possible to resolve the *Strickland* claim without first determining if [Defendant's] challenge to the [underlying claim] is meritorious" because, "[i]f it is not meritorious, the [Defendant] cannot successfully argue that counsel's failure to raise the claim on direct appeal denied [him his] constitutional right of representation."). To effectuate a knowing, intelligent, and voluntary waiver of the right to counsel under Pennsylvania law, the court must conduct a colloquy that complies with Pa. R. Crim. P. 121. Specifically, the court must advise the defendant of the right to be represented by counsel; the nature of the charges against him and the elements of those charges; the permissible range of sentences and/or fines for the charged offenses; the fact that he will still be bound by the normal rules of procedure while representing himself; that possible defenses, unknown to the defendant but known to counsel, might exist and be subject to waiver if not raised at trial; that many rights, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, they may be permanently lost. *See* Pa. R. Crim. P. 121. These factors largely overlap those required by the Sixth Amendment. *See United States v. Taylor*, 21 F.4th 94, 100 (3d Cir. 2021) (noting that the

Sixth Amendment requires a court conducting a waiver inquiry to ascertain whether the defendant "has clearly and unequivocally asserted his desire to represent himself," "understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other factors important to a general understanding of the risks involved," and "is competent to stand trial").

The trial court did not address any of these rights and protections during Torres-Olan's colloquy, asking only whether Torres-Olan's decision to proceed without counsel was "a knowing and voluntary decision on [his] part." *Torres-Olan*, 290 A.3d 650 at *4 (quoting N.T., 9/28/15, at 5-6).[14]  Because the court failed to apprise him of, among other things, the numerous charges against him, the elements of those charges, or the range of sanctions he could face if convicted, Torres-Olan's challenge to the sufficiency of the colloquy had obvious merit.  *See e.g.*, *Commonwealth v. Isaac*, 205 A.3d 358, 360 (2019) ("Appellant represented himself at trial after a defective waiver-of-counsel colloquy—the trial court never apprised Appellant of the elements of the charged offenses."); *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1335–36 (1995) ("To ensure that a waiver is knowing, voluntary, and intelligent, the trial court must conduct a 'probing colloquy,' which is a searching and formal inquiry as to whether the defendant is aware both of the right to counsel and of the significance and consequences of waiving that right."). *See also United States v. Taylor*, 21 F.4th 94, 104 (3d Cir. 2021) ("Because the District Court denied Taylor's request to represent himself without completing a sufficient inquiry of the relevant matters, and thereby denied Taylor his Sixth Amendment right to self-representation, we will vacate Taylor's conviction and remand to the District Court for a new trial."); *United States v.*

---

[14] It is well-settled that "[t]he mere fact that an accused may tell (the court) that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." *United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982) (quoting source omitted).

*Goldberg*, 67 F.3d 1092, 1102 (3d Cir. 1995) (vacating conviction because "the district court failed

to inform Goldberg of the risks of self-representation"); *McMahon v. Fulcomer*, 821 F.2d 934, 946

(3d Cir. 1987) ("While the trial judge apprised the defendant of the procedure to be used in his

ensuing trial, he failed to ensure that the defendant's decision to proceed pro se in that trial was

made with 'eyes open'—that McMahon truly understood the consequences of dismissing his

attorney and electing to represent himself . . .").

The next question under *Strickland* is whether appellate counsel exercised reasonable

professional judgment in failing to challenge the sufficiency of Torres-Olan's pro se colloquy. The

proper standard for attorney performance is that of "reasonably effective assistance"—in other

words, Torres-Olan must show that appellate counsel's representation fell below an objective

standard of reasonableness considering all the circumstances. *See Strickland*, 466 U.S. at 687–88.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013) (quoting *Strickland*,

466 U.S. at 689). As the United States Supreme Court explained in *Strickland*:

> [S]trategic choices made after thorough investigation of law and
> facts relevant to plausible options are virtually unchallengeable; and
> strategic choices made after less than complete investigation are
> reasonable precisely to the extent that reasonable professional
> judgments support the limitations on investigation. In other words,
> counsel has a duty to make reasonable investigations or to make a
> reasonable decision that makes particular investigations
> unnecessary. In any ineffectiveness case, a particular decision not to
> investigate must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to counsel's
> judgments.

466 U.S. 690-691.

In the instant case, as discussed above, the trial court failed to conduct an adequate colloquy

before permitting Torres-Olan to represent himself at trial. No reasonable professional in Attorney

Hathaway's position could conclude from the record that the trial court's colloquy adequately protected his client's rights. *See Richardson v. Superintendent Coal Township SCI*, 905 F.3d 750, 762–63 (3d Cir. 2018) (there was "no rational basis to believe that counsel's failure to argue the ... issue on appeal was a strategic choice" because "the sentencing judge conducted no colloquy before letting Richardson proceed without counsel," and thus, appellate counsel's failure to raise this issue, and PCRA counsel's failure to raise appellate counsel's failure, "cannot be justified as a tactical decision."). Indeed, the Superior Court appeared to recognize that, had this issue been raised on direct appeal, as Torres-Olan requested,[15] he would have been entitled to a new trial. It is well-settled that an attorney's failure to pursue an argument of "obvious merit and importance" without any apparent "strategic or tactical justification" can only be regarded as objectively unreasonable. *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000) (counsel's failure to raise an "obvious and potentially successful" issue was objectively unreasonable). The Court reaches the same conclusion here.

Finally, Torres-Olan must show a reasonable probability that, but for Attorney Hathaway's deficient performance, he "would have prevailed on his [direct] appeal." *Robbins*, 528 U.S. at 285-86 (citing *Strickland*, 466 U.S. at 694). Under well-established Pennsylvania law, the "[f]ailure to conduct a thorough, on-the-record colloquy before allowing a defendant to proceed to trial pro se' categorically 'constitutes reversible error' on direct appeal." *Isaac*, 205 A.3d at 363 (quoting *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015)). *See also Commonwealth v. Phillips*, 93 A.3d 847, 855 (Pa. Super. 2014) ("In light of the ... court's failure to meet the minimum requirements of Rule 121 and to question Appellant on the qualitative aspects

---

[15] As discussed above, at the PCRA hearing Attorney Hathaway testified that Torres-Olan "state[d] that he did want to raise the absence of a pro se colloquy" but that Attorney Hathaway "didn't find any factual or legal merit to raising that." ECF No. 31 at 42-45.

of his waiver of counsel at multiple critical stages of the proceedings, we are constrained to vacate the judgment of sentence and remand for further proceedings."). Accordingly, there is a reasonable probability that, but for Attorney Hathaway's failure to raise Torres-Olan's pro se colloquy claim on direct appeal, Torres-Olan would have prevailed on his appeal and received a new trial. This is sufficient to satisfy *Strickland's* prejudice requirement.

In sum, Attorney Hathaway's failure to attack the trial court's obviously deficient Rule 121 colloquy on direct appeal was objectively unreasonable. If not for Attorney Hathaway's failure, Torres-Olan would have prevailed on appeal and been granted a new trial. These findings constitute ineffective assistance of appellate counsel under *Strickland. See Pou II*, 2021 WL 5604991, at *4. Torres-Olan is therefore entitled to habeas relief. *See id.*

## IV.    Conclusion

Because Torres-Olan was denied his Fourteenth Amendment right to effective assistance of counsel in his direct appeal, the Court will issue a conditional writ of habeas corpus. The execution of the writ of habeas corpus shall be stayed for a period set forth in the conditional writ Order, within which time the Commonwealth must commence a new trial of Torres-Olan. If the Commonwealth does not commence a new trial within that time, the writ shall issue, and the Superintendent Respondent shall release Torres-Olan from custody on the judgment of sentence imposed by the Court of Common Pleas of Erie County at CP-25-CR-0001888-2015.

A separate order will follow.

Dated this 8th day of July, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE